# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

JOE NEWTON PETITIONER

v. NO. 5:09CV00055 HDY

LARRY NORRIS, Director of the Arkansas Department of Correction RESPONDENT

## MEMORANDUM OPINION AND ORDER

STATE COURT PROCEEDINGS. The Arkansas Supreme Court found that the following facts gave rise to petitioner Joe Newton ("Newton") being charged with capital murder in Ashley County, Arkansas, Circuit Court:

> In the late hours of December 13, 2003, or the very early hours of December 14, 2003, Greg Parker was stabbed to death. On December 14, 2003, Crossett police received a 911-call informing them that there was a body at the apartment complex located at 401 Main Street. Officer David Tumey was among the first officers to arrive. He testified that they found a black male lying on his back in front of an apartment. Tumey checked the man for vital signs and found none. Officer Cliff Bailey arrived shortly thereafter and took command of the crime scene. Bailey testified that a man was pacing nearby and talking nervously. The man identified himself as Terrance Adkins and identified the dead man as Greg Parker.

Officer Fred Hogan was also present at the crime scene and testified that there was some type of a mat lying under the body and what appeared to be marks on the concrete from the body leading back toward a nearby apartment door. Officer Bailey testified that there was a "bloody drag trail" from the body to the door of a nearby apartment. According to Officer Tumey, there was a "blood path" leading from the body to apartment A-3. The photographs and crime scene video clearly show a swath of blood leading from the body to apartment A-3, which was Newton's apartment.

Bailey testified that as he spoke with Adkins, Newton was standing behind a storm door just inside the doorway of his nearby apartment. According to Hogan, Bailey entered Newton's apartment and asked Hogan to follow him. They took Adkins inside Newton's apartment with them. Hogan was directed by Bailey to watch Newton while Bailey spoke to Adkins. At this time, Newton was seated at his kitchen table. After discussing the presence of the body with both Adkins and Newton, Bailey directed Hogan to take Adkins and Newton outside and place them in police cars. Each was informed that he was not under arrest.

The scene was secured at this time. Officer Harold Pennington arrived and examined the scene near the body. He then observed spots of blood on the floor of Newton's apartment that he was able to see through Newton's storm door. Pennington entered the apartment and followed the spots of blood that took him into several rooms. Pennington videotaped the area outside and inside the apartment including floors, walls, and various objects on which blood could be seen, as well as damage done to the apartment such as broken glass in the living room. He seized an area rug from the living room and a pair of shoes from a bedroom. On December 15, 2003, Pennington appeared in court seeking a search warrant and offering as evidence in support of issuance of the warrant, the seized items and the videotape, along with other evidence such as the blood trail to Newtons' door. Pennington obtained a search warrant which he then executed on December 17, 2003.

See Newton v. State, 366 Ark. 587, 237 S.W.3d 451, 452-453 (2006).

Newton filed a motion to suppress the searches of his apartment that occurred on December 14, 2003, and again on December 17, 2003. The state Supreme Court found the following with regard to his motion to suppress:

> In his motion to suppress, Newton argued that the search of his residence on December 14, 2003, and the search of his residence on December 17, 2003, were carried out in violation of the Fourth Amendment to the United States Constitution. At the hearing, Newton argued that the police searched his home without a warrant on December 14, 2003, in violation of his constitutional rights. Newton argued that this illegal search on December 14, 2003, tainted all evidence discovered and seized that night. He further argued that the State relied on the items illegally obtained on December 14, 2003, as evidence supporting issuance of the search warrant on December 15, 2003. This, Newton argue[d], means that all items seized pursuant to the search warrant were also tainted. He thus argued that all the seized evidence must be suppressed, or in other words, excluded at trial.
>
> ...
>
> However, the State argued that there was no illegal search giving rise to exclusion because the evidence seized on December 14, 2003, was in plain view; therefore, the search was not illegal, and the exclusionary rule did not apply. ...
>
> The circuit court found that the plain-view doctrine applied. The court noted that there was a blood trail to Newton's door, and that blood could be seen inside of Newton's apartment. Based on the blood seen inside the apartment, the court concluded that under the plain-view doctrine, the search was permissible. ....

See Id., 237 S.W.3d at 453.

Newton was later tried and convicted of capital murder. He was sentenced to life in prison without parole in the custody of respondent Larry Norris ("Norris").

Newton appealed his conviction. On appeal, he raised a single claim, that being, a claim that his motion to suppress was erroneously denied. The state Supreme Court found that the trial court judge had properly denied the motion to suppress but did so for the wrong reason; the state Supreme Court specifically found as follows:

> Because we have some misgivings about approving a warrantless entry under the facts of this case, our preference is to affirm for an alternative reason. The [trial] court erred in its analysis. However, as the State argues, where the [trial] court reached the correct result but for the wrong reason, we will not reverse the decision. ....
>
> ...
>
> In the present case, upon arriving at the scene, police found a body lying on a mat that had apparently been used to move the body. A blood trail stretched from the body to Newton's front door. There were no blood spatters on the walls or in the area surrounding the body, even though there were copious amounts of blood on the body. This gave police reason to believe that the death may have occurred elsewhere than at the location where the body was found. Through Newton's storm door, police could see blood on the floor inside his apartment. In addition, Newton had a cut on his leg. There was certainly reason to believe that a crime had been committed, and there was reason to believe that evidence concerning the crime would be found in Newton's apartment. However, the police did not seek a warrant and instead entered Newton's apartment without a warrant. After seizing the area rug and shoes, and taking the videotape, the search was terminated that night for various reasons, including procurement of a search warrant.

> At the probable-cause hearing, the above-noted evidence as to the condition of the body and conditions near the body, as well as the blood trail leading to Newton's door, were discussed and considered. While other matters such as conditions found in the apartment during the illegal search were discussed, evidence present outside the apartment, including the location of the body, the "bloody-drag trail," and blood visible on the floor inside the apartment, established probable cause to search Newton's apartment. While we have misgivings about the warrantless search on December 14, 2003, it was terminated with the intent of obtaining the search warrant, which was issued based on adequate probable cause. Even if police had not illegally entered Newton's apartment, they would have later entered under a valid search warrant and inevitably discovered the alleged tainted evidence. The [trial] court reached the correct result and we affirm.

See Id, 237 S.W.3d at 454-455.

Newton thereafter filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. In the petition, he raised two claims, those being, (1) the evidence supporting his conviction was not sufficient; and (2) ineffective assistance of counsel as a result of counsel's failure to: "(a) file a motion in limine concerning the suppression of evidence so that the decision of the [trial] court on that matter could have been appealed before trial proceedings continued, and (b) ... argue that the crime scene and evidence may have been tainted." See Document 1 at 3. Notwithstanding Newton's assertions of error, his petition was denied. His first claim was rejected because it was a direct attack on his conviction and thus not a proper claim in a post-conviction proceeding; his second claim was rejected because he had raised it on direct appeal and could not re-argue it in a post-conviction proceeding.

Newton appealed the denial of his petition. The state Supreme Court found no reversible error and affirmed the denial of his petition. See Newton v. State, 2008 WL 1748278 (Ark.S.Ct. April 17, 2008).

During the pendency of Newton's first post-conviction proceeding, he filed a second petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. In that petition, he challenged his attorney's representation. The parties agree that the petition is still pending in Ashley County, Arkansas, Circuit Court.

FEDERAL COURT PROCEEDINGS. Newton commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the petition, he raised two claims, those being: (1) "[t]he Arkansas Supreme Court's conclusions to deny ... Newton's Fourth Amendment claims were contrary to or an unreasonable application of clear Supreme Court case law as to the theory of inevitable discovery," see Document 1 at 5; and (2) "[t]he finding of facts by the Arkansas Supreme Court affirming [the] denial of the motion to suppress was based upon an unreasonable determination of [the] facts based upon the record," see Document 1 at 7.

Norris filed a response to the petition. He maintained that Newton's Fourth Amendment claims are not cognizable in a federal habeas corpus proceeding because they are barred from federal court review by Stone v. Powell, 428 U.S. 465 (1976). For that reason, Norris maintained that the petition should be dismissed.

Newton filed a reply to Norris' response. In the reply, Newton first addressed the question of whether his Fourth Amendment claims are barred from federal court review by Stone v. Powell. He maintained that Stone v. Powell does not bar consideration of his claims because he was not afforded a full and fair opportunity to litigate the claims. He specifically maintained that he was not afforded a full and fair opportunity to litigate the claims when the state Supreme Court affirmed the denial of his motion to suppress on a ground not relied upon by the trial court judge and not fully briefed by the parties on appeal.[1] Newton additionally maintained that the adjudication of his claims resulted in a decision that was contrary to, or involved an unreasonable application of, Nix v. Williams, 467 U.S. 431 (1984), and/or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

---

1

With regard to that assertion, Newton noted that the trial court judge denied the motion to suppress on the ground that the evidence was in the plain view of the police officers at the scene of the murder. The state Supreme Court rejected that basis for denying the motion to suppress, finding instead that the discovery of the evidence was inevitable. In the concluding portion of Newton's reply, he provided the following summary of his assertion:

> In short, ... Newton had no reasonable grounds for believing that the Arkansas Supreme Court would deny relief on inevitable discovery. This is because the doctrine *simply did not apply*. No one could have reasonably foreseen that the state[] supreme court would have applied the inevitable discovery doctrine and, to do so, would rely upon evidence that was tainted. It made no sense. Of course, had ... Newton reasonably believed the Arkansas Supreme Court was going to deny relief upon inevitable discovery, or if the [trial] court had raised this issue in the slightest (making the issue something that may have been the grounds for the [trial] court's decision and, thus, an important legal issue to brief in detail), he would have spent more than two paragraphs addressing the matter. But under these facts, the state courts did not provide ... Newton with full and fair litigation of the relevant Fourth Amendment arguments.

See Document 8 at 8 (emphasis in original).

EXHAUSTION. Having completely reviewed the parties' submissions, the Court begins by briefly addressing the question of whether Newton has exhausted his available state remedies.[2] The parties agree that his second petition for post-conviction relief is still pending in Ashley County, Arkansas, Circuit Court. Neither of the claims at bar, though, were raised in that petition. The claims, which were combined into a single claim on direct appeal, were instead fully litigated in the state trial and appellate courts. The Court therefore finds that the two claims raised in this petition have been fully exhausted.

STONE V. POWELL. Stone v. Powell provides that a Fourth Amendment claim is not cognizable in a federal habeas corpus proceeding if the state afforded the petitioner an opportunity for full and fair litigation of the claim. In Willett v. Lockhart, 37 F.3d 1265 (8th Cir. 1994), cert. denied, 514 U.S. 1052 (1995), the Court of Appeals adopted a two-part test for determining whether a petitioner had an opportunity for full and fair litigation of a Fourth Amendment claim in state courts. "Under this test, a Fourth Amendment claim is Stone-barred, and thus unreviewable by a federal habeas courts, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." See Id. at 1273.

2 "The doctrine of exhaustion prescribes that 'as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.'" See Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995) [quoting Rose v. Lundy, 455 U.S. 509, 515 (1982)].

With regard to the first part of the Willett v. Lockhart test, it is clear that the State of Arkansas provided Newton with a procedure to raise his Fourth Amendment claims by permitting the filing of a trial court motion to suppress and permitting appellate review of any adverse ruling. That part of the test requires nothing more.[3]

With regard to the second part of the Willett v. Lockhart test, it is difficult to see how Newton was foreclosed from using the aforementioned procedure because of an unconscionable breakdown in the system. It may be true that the state Supreme Court affirmed the denial of his motion to suppress on a ground not relied upon by the trial court judge and not fully briefed by the parties on appeal, but that fact does not establish an unconscionable breakdown in the system for at least two reasons. First, the Court knows of nothing that would prevent an appellate court from affirming the ruling of a lower court on a ground different than that relied upon by the lower court. Second, Newton was not prevented in any way from briefing the inevitable discovery issue on appeal. In fact, he briefed the issue but not to the extent he now wishes he had. He simply disagrees with the appellate court ruling on his motion to suppress, and it is clear that the "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the [system]." See Chavez v. Weber, 497 F.3d 796, 802 (8th Cir. 2007) (internal quotations omitted).

---

[3] "The federal courts on habeas review of [Fourth Amendment] claims are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." See Willett v. Lockhart, 37 F.3d at 1273 (emphasis in original).

Notwithstanding the foregoing, it is possible to construe Newton's pleadings in such a manner that he believes the state courts of Arkansas failed to adequately develop the record on his Fourth Amendment claims and did not afford him an opportunity for full and fair litigation of his claims. There is at least one problem with his assertion. Willett v. Lockhart provides that the federal courts are to abstain from reviewing the record to determine whether the state courts' findings of fact are supported by the record.[4] Accordingly, the Court will abstain from reviewing the record.

The Court finds that Newton had an opportunity for full and fair litigation of his Fourth Amendment claims in state court. As a result, they are not cognizable in this proceeding in accordance with Stone v. Powell.

CONCLUSION. Having found that Newton's Fourth Amendment claims are not cognizable in this proceeding, his petition should be, and is, dismissed with prejudice. Judgment will be entered for Norris, and all requested relief is denied.

IT IS SO ORDERED this 28 day of May, 2009.

H D Y

UNITED STATES MAGISTRATE JUDGE

---

4 "We think that the Stone opinion, which clearly limits the scope of federal habeas review as to Fourth Amendment claims, was intended to short-circuit the district court's review of the record in such cases as well as to avoid the court's conducting anew an evidentiary hearing on the claim." See Willett v. Lockhart, 37 F.3d at 1271.